# TAB A

PLAYBOY ENTERPRISES, INC., Plaintiff v. ASIAFOCUS INTERNATIONAL, INC., INTERNET PROMOTIONS, INC., GRAHAM DALEY, and ALAN SMITH, Defendants

Civil Action No. 97-734-A

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA, ALEXANDRIA DIVISION

1998 U.S. Dist. LEXIS 10459

April 10, 1998, Decided
April 10, 1998, Filed

**PRIOR HISTORY:**
[*1] Adopting Magistrate's Document of February 2, 1998, Reported at: 1998 U.S. Dist. LEXIS 10359.

**COUNSEL:**
For PLAYBOY ENTERPRISES, INC., plaintiff: Jonathan T. Cain, Mays & Valentine, LLP, McLean, VA.

**JUDGES:**
Claude M. Hilton, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:**
Claude M. Hilton

**OPINION:**

ORDER

This case came before the Court on the Report and Recommendation of Magistrate Judge Jones of February 2, 1998. Based on a *de novo* review of the evidence of this case, the Court adopts the findings and recommendation of the Magistrate Judge. It is hereby

ORDERED that default judgment is entered for the plaintiff against all defendants, jointly and severally in the amount of $ 3,000,000 plus costs and, upon tender of supporting affidavit, reasonable attorneys' fees.

Claude M. Hilton

UNITED STATES DISTRICT JUDGE

Alexandria, Virginia
April 10, 1998

PLAYBOY ENTERPRISES, INC., Plaintiff, v. ASIAFOCUS INTERNATIONAL, INC., and INTERNET PROMOTIONS, INC., and GRAHAM DALEY, and ALAN SMITH, Defendants.

CIVIL ACTION NO. 97-734-A

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA, ALEXANDRIA DIVISION

1998 U.S. Dist. LEXIS 10359

February 2, 1998, Decided
February 2, 1998, Filed

**SUBSEQUENT HISTORY:**
[*1] Adopting Order of April 10, 1998, Reported at: 1998 U.S. Dist. LEXIS 10459.

**DISPOSITION:**
Recommended that default judgment be entered for the plaintiff against all defendants, jointly and severally, in the amount of $ 3,000,000 plus costs and reasonable attorneys' fees.

**COUNSEL:**
For PLAYBOY ENTERPRISES, INC., plaintiff: Jonathan T. Cain, Mays & Valentine, LLP, McLean, VA.

**JUDGES:**
Thomas Rawles Jones, Jr., United States Magistrate Judge.

**OPINIONBY:**
Thomas Rawles Jones, Jr.

**OPINION:**

### REPORT AND RECOMMENDATION

This action arises under the Lanham Act of 1946, 15 U.S.C. § 1051 et seq. and is a civil action for trademark infringement, false designation of origin, unfair competition and dilution, and common law trademark infringement and unfair competition under the common law of the Commonwealth of Virginia. Process was served on the defendants pursuant to the Hague Convention. Default was entered by the Clerk on August 25, 1997. Pursuant to Local Rule 72, the case was heard on October 29, 1997, on the plaintiff's application for default judgment. The magistrate judge subsequently asked for a supplemental brief on personal jurisdiction, which has been provided.

### FACT SUMMARY

Based on the complaint, documents submitted in support of the application, and testimony by the plaintiff's [*2] witnesses, the magistrate judge finds as follows:

The plaintiff ("PEI"), is a Delaware corporation having offices in New York, New York and a principal place of business in Chicago, Illinois. (Kaiser Decl. at P 2; Compl. at P 1). Defendant AsiaFocus International, Inc. ("AsiaFocus") is a foreign corporation having its principal place of business in either Hong Kong or the British Virgin Islands. (Complaint at P 2; Exs. B, G). Defendant Internet Promotions, Inc. is a Hong Kong corporation with its principal place of business in Hong Kong. (Compl. at P 3). Defendant Graham Daley is an individual citizen and resident of Hong Kong. (Compl. at P 4). Defendant Alan Smith is an individual citizen and resident of Hong Kong. These two individual defendants substantially own, control and operate defendants AsiaFocus and Internet Promotions, Inc. (Compl. at P 5).

For many years, and continuously, prior to the defendants' acts that are in issue, PEI has published the men's entertainment magazine *Playboy*, featuring photographs of nude women, celebrity interviews, and articles of general interest. (Compl. at P 10; Kaiser Decl. P 3). *Playboy* magazine is published and distributed in interstate [*3] commerce, including the Commonwealth of Virginia, by PEI. *Playboy* magazine is also distributed throughout the world and is published in 15 international editions. (Compl. at P 11; Kaiser Decl. P 3). Continuously since long prior to the defendants' acts, the plaintiff has sold, through itself and its licensees, a wide variety of merchandise under the trademarks PLAYMATE and PLAYBOY, in interstate commerce including the Commonwealth of Virginia. (Compl. at P 12, 16; Kaiser Decl. at P 11).

PEI owns federal trademark registrations for a variety of goods and services including (1) http:www.playboy.com (Reg. No. 2,011,646 for computer services); (2) PLAYBOY (Reg. No. 791,734 for playing cards); (3) PLAYMATE (Reg. No. 721,987 for calendars; (4) PLAYMATE (Reg. No. 777,867 for key chains); and (5) PLAYMATE (Reg. No. 1,308,903 for watches) (Kaiser Decl. P 18). (Compl. at P 13, 17; Kaiser Decl. P 7; Exs. E, F). n1 PEI and its licensees have spent considerable time and money promoting the PLAYBOY and PLAYMATB trademarks nationwide and throughout the world. (Compl. at P 14). As a result of PEI's long-standing use of the PLAYBOY and PLAYMATE trademarks, the trademarks have become famous and [*4] have developed significant goodwill and secondary meaning, so that the public has come to associate them exclusively with PEI. (Compl. at PP 15, 20; Kaiser Decl at P 9).

n1 Unless otherwise noted, exhibits referenced herein are annexed to PEI's Memorandum of Law in Support of its Application for Default Judgment.

PEI owns two sites on the Internet on the World Wide Web. Both sites prominently feature PEI's trademarks PLAYBOY and PLAYMATE, as well as photographs, articles, PEI merchandise, videos and subscription information for *Playboy* Magazine. (Compl. at P 21; Natale Decl. at P 6).

The federal government requires people and entities wishing to appear on the Internet to register their Internet domain names with InterNIC, an organization run for the government by Network Solutions, Inc. ("NSI"), of Herndon, Virginia. (Compl. at P 29; Carr Decl. at P 2). Domain names may be registered upon payment of a $ 100 fee and the completion of an on-line template called the "NSI Registration Agreement". (Compl. [*5] at P 30; Ex. H). NSI makes no independent determination of an applicant's right to use the requested domain name. The NSI Registration Agreement provides that "the party requesting registration of [the] name certifies that, to her/his knowledge, the use of [the] name does not violate trademark or other statutes." (Compl. at P 31; Ex. H). Pursuant to the NSI Registration Agreement, a registrant must designate persons to serve as administrative, technical, and billing contacts. (Compl. at P 32; Ex. H).

Applicants to NSI for a domain name registration agree to be bound by the terms of the NSI Domain Name Policy Statement. The Policy Statement provides:

These guidelines, as amended, and the registration agreement (template) together constitute the complete and exclusive agreement of the parties regarding domain names. These guidelines supersede and govern all prior proposals, agreements, or other communications between the parties. Registrant agrees that registration of a domain name constitutes an agreement to be bound by this policy, as amended from time to time.

(Compl. at P 36; Ex. H).

The defendants have created and maintained several Internet World Wide Web [*6] sites which were accessible throughout the United States, including the Commonwealth of Virginia and within this judicial district. On these Web sites, the defendants solicited sales of merchandise and of subscriptions for the privilege of viewing pictures, etc. over the Internet. (Compl. at P 38; Carr Decl. P 19; Ex. V). The defendants have promoted their Web sites, adult photo collections and merchandise in such a way as to create a false association between the defendants and PEI. The defendants have provided adult nude photos on the Web pages located at the ASIAN-PLAYMATES.COM and PLAYMATES-ASIAN.COM. addresses. (Compl. at P 39).

Defendant Graham Daley is the Director of AsiaFocus and is listed as the "Administrative Contact" for the Internet domain names registered to AsiaFocus. (Compl. at P 33; Ex. G). Defendant Alan Smith is the administrative, technical, billing and zone contact for ASIAN-PLAYMATES.COM and PLAYMATES-ASIAN.COM. (Compl. at P 34; Ex. G). When Daley designated himself as the "Administrative Contact" for the internet site, by contract he was thereby holding himself out as a person who was "aware of the behavior of the hosts [of the site], and [able to] take [*7] prompt action on reports of problems... a responsible person who has the authority to either enforce these actions himself or delegate them to someone else." Plaintiff's Supplemental Memorandum of Law at 5-6. In January, 1997, defendant Smith replaced Daley as Administrative Contact, and also undertook other responsibilities. Id. at 8. The magistrate judge therefore finds that Daley and Smith willfully participated in the infringing acts, and that their continuing participation in the infringement was blatant, even after PEI's cease-and-desist demand, so that their acts rise to the level of bad faith misconduct

The defendants have used the plaintiff's registered trademarks PLAYMATE and PLAYBOY within the domain names, ASIAN-PLAYMATES.COM and PLAYMATES-ASIAN.COM. as part of the Web pages offered under those addresses. The upper left corner of each page bore the words "Asian Playmates." The URL appeared in the upper right corner of each page and read

Case 1:02-cv-03982-JFM   Document 14-2   Filed 10/31/2003   Page 5 of 9

1998 U.S. Dist. LEXIS 10359, *                                    Page 3

as follows: http://www.asian-playmates.com. (Compl. at P 42; Carr Decl. P 9). The defendants also used the trademark PLAYMATE in their electronic mail address playmates@pinmail.com, and on almost every page of their Web site in [*8] a graphic entitled "ASIAN-PLAYMATES FOR THE PLAYBOY IN ALL OF US." (Compl. at P 40; Ex. I; Carr Decl. PP 9-10).

The defendants have purposefully employed deceptive tactics to attract consumers to their Web site under the guise that their sites are sponsored by or somehow affiliated with PEI. Specifically, the defendants embedded PEI's trademarks "playboy" and "playmate" within the Web sites' computer source code which is visible to "search engines" that look for Web sites containing specific words or phrases specified by computer users. (Carr Decl., P 13; Ex. K). Thus, a consumer conducting a search for PEI's Web site by typing in the trademark "Playboy" or "Playmate" would receive a search engine-generated list which included the asian-playmates Web site. (Carr Decl. PP 13-14; Exs. K, L). Through the defendants' willful deception, consumers have been misled into believing the asian-playmates Web site is connected with, or somehow sponsored by, PEI.

The PLAYBOY and PLAYMATE trademarks were also utilized by the defendants to promote the sale of goods and services including playing cards, calendars, wrist watches, and key chains, which may be ordered by computer e-mail. (Carr Decl. [*9] P 6; Exs. N, S, T).

The defendants have actively encouraged other Web sites to promote the infringing asian-playmates collection. Through a "Click for Cash" program, the defendants offered monetary compensation to other Web site owners who displayed the asian-playmates banner on their Web sites. Each Web site would receive $ .04 for each "hit" that asian-playmates received from that respective Web site where the banner appears. (Carr Decl., P 16; Ex. Q).

There is also evidence of actual confusion. PEI has received at least one letter from a consumer who believed PEI sponsored www.asian-playmates.com. (Kaiser Decl. P 21; Ex. M). The consumer expressed disappointment to PEI that he could not access www.asian-playmates.com in Hong Kong.

The defendants are not now and have never been authorized by PEI to use the PLAYBOY and PLAYMATE trademarks in connection with any business or service. (Compl. at P 45; Kaiser Decl. P 20).

Until recently, the defendants had not complied with PEI's requests to cease using the Playboy trademarks. (Compl. at P 46; Ex. A). The defendants responded to PEI's cease-and-desist demand by requesting or demanding a six-month transition period, which PEI rejected. [*10] Id. Then, around the end of October, 1997, the defendants apparently ceased all infringing and counterfeit uses of PEI's marks. Plaintiff's Memorandum of Law in Further Support of Application for Maximum Statutory Damage Award at 1-2.

## CONCLUSIONS OF LAW

### A. Jurisdiction.

Each defendant was properly served with process. The record reflects that on May 19, 1997, the plaintiff served the summons and complaint on the Secretary of the Commonwealth as statutory agent for each defendant in accordance with Federal Rule of Civil Procedure 4(f) and Section 8.01-329 of the Code of Virginia, as amended. The process served on the Secretary of the Commonwealth provided the last known address of each defendant, as obtained from InterNIC, discussed supra. On May 22, 1997, the Secretary of the Commonwealth forwarded the complaint and summonses against AsiaFocus International, Inc., Internet Promotions, Inc., Graham Daley, and Alan Smith by first class mail to the Chief Secretary of Hong Kong at the Central Government Offices. The magistrate judge finds that this service complies with the Hague Convention on Service Abroad of Judicial and Extrajudicial Documents in [*11] Civil or Commercial Matters.

As the plaintiff recognizes, the court's personal jurisdiction over the foreign defendants on the federal trademark claims, as well as the state law claims, depends on application of the Virginia long arm statute. See American Network, Inc. v. Access America/Connect Atlanta Inc., 975 F. Supp. 494, 496 (S.D.N.Y. 1997). The magistrate judge finds that personal jurisdiction exists over all defendants on at least two bases.

First, the magistrate judge finds that the court has personal jurisdiction over each defendant under Virginia Code § 8.01-328.1(A)(4) (jurisdiction over defendants "causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct... in this Commonwealth"). The complaint alleges that the corporate defendants have caused tortious injury in Virginia, and that they regularly solicit business in Virginia, within the meaning of that statute.

Long arm jurisdiction over defendants whose activity involves computers linked to the Internet is a new and evolving jurisprudence. There is little appellate authority yet, and [*12] some of the district courts' decisions are arguably inconsistent. In the default-judgment context of the present case, it suffices to say that the magistrate judge has examined the plaintiff's allegations in light of the precedents and finds that

Case 1:02-cv-03982-JFM   Document 14-2   Filed 10/31/2003   Page 6 of 9

1998 U.S. Dist. LEXIS 10359, *                                    Page 4

personal jurisdiction clearly exists pursuant to Virginia Code § 8.01-328.1(A)(4) on the authority of the most-analogous, better-reasoned decisions. In particular, the magistrate judge has relied upon Zippo Manufacturing Company v. Zippo Dot Com, Inc., 952 F. Supp. 1119 (W.D. Pa. 1997), and Maritz, Inc. v. Cybergold, Inc., 947 F. Supp. 1328 (E.D. Mo. 1996), and the authorities there cited; and on Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 104 S. Ct. 1473, 79 L. Ed. 2d 790 (1984), a non-Internet defamation case that is closely analogous on its facts.

Reading the federal trademark and copyright precedents together with the Virginia long arm statute incorporated into Rule 4, it is equally clear that the willful, bad-faith tortious conduct of defendants Daley and Smith also brings them within this court's personal jurisdiction pursuant to Virginia Code § 8.01-328.1(A)(4). See Plaintiff's Supplemental Memorandum of Law [*13] at § I(A-E) (pp. 2-8).

On the authority of Telco Communications Group, Inc.. v. An Apple A Day, Inc., 977 F. Supp. 404 (E.D. Va. 1997), and of Krantz v. Air Line Pilots Ass'n, Int'l, 245 Va. 202, 427 S.E.2d 326 (1993), the magistrate judge also concludes that personal jurisdiction exists over each defendant under Virginia Code § 8.01-328.1(A)(3), because each act of access to the defendants' Internet sites by a Virginia computer user completed a "tortious injury by an act... in this Commonwealth." n2

n2 The plaintiff also cites the Telco decision for jurisdiction under subsection (A)(4), but the facts in Telco are at least arguably distinguishable as to that subsection.

(The plaintiff also argues that the defendants "transacted business" in Virginia within the meaning of Virginia Code § 8.01-328.1[A][1] by registering their Internet sites with NSI. The magistrate judge is not satisfied that the federal government's fortuitous selection of a Virginia firm to manage Internet [*14] domain names, and the resulting requirement that each of many thousands of people and entities "transact business" with that firm by registering their Internet sites with the firm, means that each registrant is thereby subjected to Virginia's long arm jurisdiction, even assuming a constitutionally adequate nexus between the act of registration and the acts sued upon. Because jurisdiction clearly exists on other bases, the court need not decide these issues in this default judgment context, and the magistrate judge recommends that the court not find jurisdiction under Virginia Code § 8.01-328.1[A][1].)

B. Confusion.

The PLAYBOY and PLAYMATE trademarks are federally registered trademarks and are therefore protected by Section 32 of the Lanham Act, 15 U.S.C. § 1114(1) which provides protection against:

any reproduction, counterfeit, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive.

15 U.S.C. § 1114(1). The PLAYBOY and PLAYMATE trademarks are also protected [*15] by Section 42 of the Lanham Act, 15 U.S.C. § 1125(a) which protects registered and unregistered marks against the use of any word, term, symbol or mark that

is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person...or in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities.

15 U.S.C. § 1125(a)(1)(A)(B).

To prevail in actions under these statutes in this Circuit, "a complainant must demonstrate that it has a valid, protected trademark and that the defendant's use of a colorable imitation of the trademark is likely to cause confusion among consumers." Lone Star Steakhouse & Saloon v. Alpha of Virginia, 43 F.3d 922, 930 (4th Cir. 1995). PEI has submitted ample evidence concerning the validity of the PLAYBOY and PLAYMATE trademarks, thereby establishing that it owns a valid, protected trademark. Thus, the question remaining [*16] for the court to determine is whether the defendants' use of the Internet domain names "asian-playmates.com" and "playmates-asian.com" would likely cause confusion among consumers on the Internet.

In making this determination, courts examine seven factors: 1) the strength or distinctiveness of the mark; 2) the similarity of the two marks; 3) the similarity of the goods/services the marks identify; 4) the similarity of the facilities the two parties use in their businesses; 5) the similarity of the advertising used by the two parties; 6) the defendant's intent; and 7) actual confusion. Pizzeria Uno Corp. v. Temple, 747 F.2d 1522, 1527 (4th Cir.

1984). It is not necessary that all the factors be implicated in a specific case or that all the factors be found in the registrant's favor for a finding of likelihood of confusion Id.

Most important among the seven factors is the distinctiveness or strength of the mark. Courts have classified marks submitted for registration into four groups in an ascending order of strength or distinctiveness: 1) generic; 2) descriptive; 3) suggestive; and 4) arbitrary or fanciful. Abercrombie & Fitch Co. v. Hunting World, Inc., 189 U.S.P.Q. 759, [*17] 537 F.2d 4, 9 (2nd Cir. 1976). Generic marks receive the least trademark protection while arbitrary or fanciful marks receive the highest level of protection. Other courts have previously classified PLAYBOY and PLAYMATE as suggestive marks "since they implicitly refer to their products' qualities." PEI v. George Frena, et. al., 839 F. Supp. 1552, 1559. See also PEI v. P.K. Sorren Export Co. Inc. of Florida, 546 F. Supp. 987, 995 (S.D.Fl. 1982). PLAYBOY and PLAYMATE are well-known marks and are widely associated with PEI's products. As a result, they have acquired substantial distinctiveness among consumers and are therefore entitled to a high degree of protection. See PEI v. Chuckleberry Publishing, Inc., 486 F. Supp. 414, 419 (S.D.N.Y. 1980).

Several of the other factors also favor a finding that the defendants' use of the terms "playboy" and "playmate" is likely to cause confusion. The defendants' Web site consists of computer images of nude women, which is also the core of PEI's business. Although the defendants' use of the term "playmate" as the main component of the domain names asian-playmates.com and playmates-asian.com. did not exactly duplicate PEI's mark, minor [*18] differences between the registered mark and the unauthorized use of the mark do not preclude liability under the Lanham Act. See Lone Star Steakhouse, 43 F.3d at 930 (finding use of "Lone Star Grill" to be an infringement of registered mark "Lone Star Steakhouse & Saloon"). The defendants also used the slogan "FOR THE PLAYBOY IN ALL OF US" on the home page of each Web site. The defendants offered merchandise such as key chains, calendars, wrist watches, and pens under the asian-playmates name. PEI owns federal trademark registrations for each of these types of goods. PEI has presented evidence of at least one instance of actual consumer confusion. (Kaiser Decl. P21; Ex. M). Finally, both parties use the Internet as a facility to provide goods and services.

The magistrate judge therefore finds a strong likelihood that the consuming public would believe that the defendants' Web site was sponsored by or somehow affiliated with PEI, given (1) the strength of PEI's trademarks PLAYBOY and PLAYMATE; (2) the defendants' unauthorized use of the identical marks PLAYBOY and PLAYMATE; (3) the similarity of the goods and services offered by PEI and the defendants; (4) the evidence of actual confusion; [*19] and (5) that the Internet is the exact marketing channel used by both PEI and the defendants. See Cardservice Int'l. Inc. v. McGee, 950 F. Supp. 737, 740 (E.D. Va. 1997) (citing Pizzeria Uno Corp. v. Temple, 747 F.2d 1522, 1527 (4th Cir. 1984).

### C. Dilution.

The defendants are also liable for dilution of PEI's trademarks PLAYMATE and PLAYBOY. Section 43(c) of the Lanham Act, provides protection to the owner of a famous mark

against another person's commercial use in commerce of a mark or trade name, if such use begins after the mark has become famous and causes dilution of the distinctive quality of the famous mark.

15 U.S.C. § 1125(c)(1).

Dilution occurs when the capacity of a famous mark to identify and distinguish its goods or services is reduced due to another's unauthorized use of the mark. See 15 U.S.C. § 1127. "Dilution is grounded on the idea that a trademark can lose its 'ability ... to clearly and unmistakably distinguish one source' through unauthorized use." Hormel Foods Corp. v. Jim Henson Productions, Inc., 73 F.3d 497, 506 (2d Cir. 1996) (quoting 3 McCarthy on Trademarks and Unfair Competition § 24.13[1][a] [*20] at 24-106 (3d ed. 1995)).

The statute establishes a two-part test for determining when relief is available under the statute. First, the mark sought to be protected must be famous. Second, the accused mark must "dilute" the famous mark by "lessening [its] capacity ... to identify and distinguish goods or services," or by tarnishing or disparaging the goodwill embodied in the mark. 15 U.S.C. § 1127. The statute protects a trademark holder from unauthorized uses of the mark regardless of competition or likelihood of confusion. See 15 U.S.C. § 1125(c).

The magistrate judge concludes that the defendants' activities clearly diluted PEI's PLAYMATE and PLAYBOY trademarks. The fame of PEI's PLAYMATE and PLAYBOY marks cannot reasonably be disputed. The trademarks have acquired such goodwill and secondary meaning through national and international advertising and promotion that the public has come to associate the PLAYMATE and PLAYBOY trademarks exclusively with PEI. It is clear that the capacity of PEI to identify its goods and services was diminished by the defendants' use of the terms to promote not only their

Web site, but the goods and services offered in connection therewith. [*21]

The plaintiff has presented sufficient evidence to establish that the blurring of the distinctiveness of PLAYMATE and PLAYBOY was willful. The defendants specifically chose to copy famous trademarks for a well-known source of "adult" entertainment for use in their own "adult" service. In doing so, they reaped the benefit of the public's established association of the trademarks PLAYMATE and PLAYBOY with adult entertainment. No other purpose appears for choosing PLAYMATE and PLAYBOY but to create that false association in the mind of the consuming public.

The defendants' willfulness is further established by their purposeful tactic of embedding the trademarks PLAYMATE and PLAYBOY in the hidden computer source code. This strategy epitomizes the "blurring" of PEI's trademarks. When a search engine led a consumer to the asian-playmates Web site in response to a search of PEI's trademarks, the consumer would probably believe that the defendants' Web site was affiliated with PEI.

### D. Damages.

PEI has been damaged by the defendants' infringing acts. The accessibility of the infringing Web sites, the defendants' successful number of hits, and the blatant display of PEI's trademarks [*22] are all factors that compound PEI's damage. The defendants' violations of Section 32 of the Lanham Act, 15 U.S.C. § 1114(1) (Count I); Section 43 of the Lanham Act, 15 U.S.C. § 1125(a) (Count II); and 15 U.S.C. § 1125(c) (Count III) warrant the award of statutory damages under 15 U.S.C. § 1117(c), which provides:

In a case involving the use of a counterfeit mark ... in connection with the sale, offering for sale, or distribution of goods or services, the plaintiff may elect ... to recover, instead of actual damages and profits under subsection (a) of this section, an award of statutory damages for any such use in connection with the sale, offering for sale, or distribution of goods or services in the amount of--

1) not less than $ 500 or more than $ 100,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just; or

2) if the court finds that the use of the counterfeit mark was willful, not more than $ 1,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just.

15 U.S.C. § 1117(c).

The defendants' multiple uses [*23] of the trademarks PLAYMATE and PLAYBOY constitute uses of "counterfeit marks" which are defined as:

mark[s] that [are] registered on the principal register in the United States Patent and Trademark Office for such goods or services sold, offered for sale, or distributed and that is in use, whether or not the person against whom relief is sought knew such mark was so registered ...

15 U.S.C. § 1116(d)(1)(B)(i).

The defendants have made unauthorized uses of the following PEI trademarks (1) http:www.playboy.com (Reg. No. 2,011,646 for computer services); (2) PLAYBOY (Reg. No. 791,734 for playing cards); (3) PLAYMATE (Reg. No. 721,987 for calendars; (4) PLAYMATE (Reg. No 777,867 for key chains); and (5) PLAYMATE (Reg. No. 1,308,903 for watches).

The magistrate judge concludes that the willful infringement embodied in the offending websites themselves is sufficiently broad, extensive, blatant, and willful to warrant award of the maximum statutory amount of $ 1,000,000. The willful infringement by offer for sale of four different categories of merchandise, which occurred on the infringing Internet sites and is somewhat subsidiary, warrants lower individual statutory [*24] amounts in the magistrate judge's view. The magistrate judge concludes that an award of $ 500,000 for each merchandise category will adequately fulfill the purposes of the statutes.

### E. Attorneys' Fees

The court has discretion to award reasonable attorneys fees in "exceptional cases" under the Lanham Act. 15 U.S.C. Section 1117(a); Cardservice Int'l, Inc. v. McGee, 950 F. Supp. 737, 742 (E.D. Va. 1997) (citing Shell Oil Co. v. Commercial Petroleum, Inc., 928 F.2d 104, 108 n.6 (4th Cir. 1991)). The Fourth Circuit has interpreted Section 1117 to require that a prevailing plaintiff "show that the defendant acted in bad faith." Scotch Whisky Ass'n v. Majestic Distilling Co., Inc., 958 F.2d 594, 599 (4th Cir.), cert. denied, 506 U.S. 862, 113 S. Ct. 181, 121 L. Ed. 2d 126 (1992). "In reaching this conclusion, the Fourth Circuit relied upon legislative history referring to acts characterized as "malicious, fraudulent, deliberate and willful." Cardservice Int'l, Inc. v. McGee, 950 F. Supp. 737, 742 (E.D. Va. 1997) (citing Scotch Whisky Ass'n, 958 F.2d at 600).

The magistrate judge has found that the defendants acted willfully and in bad faith in initiating [*25] and continuing their infringing activities despite notice from PEI and the commencement of this litigation. This case is therefore "exceptional" within the meaning of Section

1117 and warrants the award of attorneys fees. However, no affidavit in support of fees has been tendered.

### RECOMMENDATION

Based on the foregoing findings and conclusions, the magistrate judge recommends that default judgment be entered for the plaintiff against all defendants, jointly and severally, in the amount of $3,000,000 plus costs and, upon tender of a supporting affidavit, reasonable attorneys' fees.

### NOTICE

By mailing copies of this report and recommendation to the parties at their addresses for service of process, the parties are notified as follows.

Objections to this report and recommendation must be filed within ten (10) days of service on you of this report and recommendation. A failure to file timely objections to this report and recommendation waives appellate review of the substance of the report and recommendation and waives appellate review of a judgment based on this report and recommendation.

Thomas Rawles Jones, Jr.

United States Magistrate Judge

February [*26] 2, 1998
Alexandria, Virginia